UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| EBONY SHANEA FRAGA,<br><br>             Plaintiff,<br><br>v.<br><br>SANDY CITY POLICE DEPARTMENT;<br>and ANTHONY GRIFFITHS,<br><br>             Defendants. | **REPORT AND RECOMMENDATION TO GRANT MOTION TO DISMISS (DOC. NO. 18) AND DISMISS ACTION WITHOUT PREJUDICE PURSUANT TO RULE 12(b)(6)**<br><br>Case No. 2:24-cv-00828<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Ebony Shanea Fraga, proceeding without an attorney, brought this action under 42 U.S.C. § 1983 against the Sandy City Police Department and Detective Anthony Griffiths.[1]  Ms. Fraga claims her constitutional rights were violated when Detective Griffiths arrested her at her home without presenting a warrant.[2]  The defendants have filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing (1) Sandy City Police Department is not a separate legal entity subject to suit, (2) to the extent Ms. Fraga's claims can be construed against Sandy City, she fails to allege a basis for municipal liability, (3) Detective Griffiths is entitled to qualified immunity, and (4) Ms. Fraga lacks standing to seek injunctive relief.[3]

---

[1] (*See* Compl., Doc. No. 1.)

[2] (*See id.* at 4.)

[3] (Mot. to Dismiss (Mot.), Doc. No. 18.)

Because Ms. Fraga's complaint fails to state a plausible claim for relief against Sandy City Police Department or Sandy City, and Detective Griffiths is entitled to qualified immunity, dismissal under Rule 12(b)(6) is appropriate. (As a result, the court need not consider Defendants' argument under Rule 12(b)(1) that Ms. Fraga lacks standing as to portions of her requested relief.) Accordingly, the undersigned[4] recommends the district judge grant the motion to dismiss and dismiss this action without prejudice under Rule 12(b)(6).

## LEGAL STANDARDS

Rule 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction, while Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Here, the defendants' only jurisdictional argument is that Ms. Fraga lacks standing to seek injunctive relief[5]—an issue the court need not reach. Accordingly, Rule 12(b)(6) applies.

To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[6] The court accepts well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff,

---

[4] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (*See* Doc. No. 12.)

[5] Defendants' qualified immunity argument is properly evaluated under Rule 12(b)(6). *See, e.g.*, *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022).

[6] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

drawing all reasonable inferences in the plaintiff's favor.[7]  But the court need not accept a plaintiff's conclusory allegations as true.[8]  "[A] plaintiff must offer specific factual allegations to support each claim,"[9] and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[10]

Because Ms. Fraga proceeds pro se (without an attorney), her filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[11]  Still, a pro se plaintiff must follow the same procedural rules as other litigants.[12]  For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[13]  While courts make some allowances for a pro se plaintiff's "failure to cite proper legal authority, her confusion of various legal theories, her poor syntax and sentence construction, or her unfamiliarity with pleading requirements,"[14] the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[15]

---

[7] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[8] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

[11] *Hall*, 935 F.2d at 1110.

[12] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[13] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (citation modified).

[14] *Hall*, 935 F.2d at 1110.

[15] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

**BACKGROUND**

Ms. Fraga filed a form civil rights complaint, checking a box indicating she is bringing claims under 42 U.S.C. § 1983.[16]  She named Sandy City Police Department and Detective Griffiths (in his individual capacity) as defendants.[17]

In her complaint, Ms. Fraga alleges that on August 28, 2024, Detective Griffiths "arrived at [her] home and forcibly detained [her] without presenting a warrant."[18]  She alleges that "[a]s a direct consequence of the alleged wrongful arrest and baseless child abuse allegations, the DCFS intervened, leading to the temporary removal of [her] 4-year-old son from her custody."[19]  She asserts this separation caused significant emotional distress and trauma for both her and her son.[20]  She further alleges she was "subjected to distressing conditions" during her detention.[21]  She notes the child abuse case was later dismissed, "highlighting the unwarranted nature of both the arrest and the resulting consequences involving DCFS."[22]  Finally, she alleges "the confiscation and subsequent damages to [her] cellphone led to financial loss and compromised

---

[16] (Compl. 3, Doc. No. 1.)

[17] (*Id.* at 2.)

[18] (*Id.* at 4.)

[19] (*Id.*)

[20] (*Id.*)

[21] (*Id.*)

[22] (*Id.*)

privacy, as the device was mishandled for three weeks before being returned in a broken condition."[23]

Ms. Fraga claims her "arrest without a warrant and detention without justification" violated her Fourth Amendment rights against unlawful search and seizure.[24]  She also claims her Fourteenth Amendment due process rights were violated "related to [her] arrest, detention, and the seizure and damage of [her] property."[25]

**ANALYSIS**

*A. Materials Outside the Pleadings*

As an initial matter, both parties present materials outside the pleadings in connection with their briefing on the motion to dismiss.  Rule 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."[26] However, records of court proceedings which bear directly on a plaintiff's claims are subject to judicial notice and may be considered without converting a Rule 12(b)(6) motion to one for summary judgment.[27]

---

[23] (*Id.*)

[24] (*Id.* at 3.)

[25] (*Id.*)

[26] Fed. R. Civ. P. 12(d).

[27] *See Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished) ("Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This includes another court's publicly filed records concerning matters that bear directly

Both parties filed state court records in support of their briefing. Defendants provided two arrest warrants for Ms. Fraga and dockets for the associated Utah state court cases.[28] Ms. Fraga filed (1) a juvenile court order finding the evidence did not support a finding of abuse or neglect, terminating the DCFS case, and returning Ms. Fraga's son to her custody; and (2) a district court order dismissing with prejudice charges of "abuse or neglect of a child with a disability" against Ms. Fraga.[29] Where all these state court records are subject to judicial notice and directly relate to Ms. Fraga's allegations, they are properly considered without converting the Rule 12(b)(6) motion to a summary judgment motion.

Ms. Fraga also filed other exhibits in support of her opposition:

- a medical consultation report from the DCFS case;

- police investigation records;

- photographs of her son;

- body camera video from the date of Ms. Fraga's arrest (which does not depict the arrest itself); and

---

upon the disposition of the case at hand." (citation modified)); *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("Federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citation modified)).

[28] (Exs. 1–4 to Mot., Doc. Nos. 18-1–18-4.)

[29] (Exs. A & B to Mot., Doc. Nos. 19-2 & 19-3.)

- a cell phone video recording of Ms. Fraga's arrest, taken by her cousin.[30]

These documents are not attached to or referenced in the complaint itself,[31] nor are they otherwise subject to judicial notice. Therefore, they may be considered only if the motion is converted to one for summary judgment.[32]

Conversion is unnecessary because the Rule 12(b)(6) motion may properly be resolved without considering these other exhibits. The evidence from the DCFS case and criminal case (medical report, police investigation records, and photographs) are irrelevant to Ms. Fraga's specific claims in this action, which address whether Detective Griffiths acted unlawfully during her arrest. Likewise, the body camera video is irrelevant where it does not depict the arrest at issue. Finally, while the cell phone video does show the arrest, it unnecessary to consider where Defendants do not contest (for purposes of this motion) Ms. Fraga's allegations regarding what occurred during the arrest.[33] Where these exhibits are extraneous, they are not considered in resolving this motion—and the motion is not converted to a motion for summary judgment.

---

[30] (Exs. C–G to Pl.'s Opp'n to Defs.' Mot. to Dismiss (Opp'n), Doc. Nos. 19-4–19-6 & 21.)

[31] *Cf. Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (noting a court may "consider documents referred to in the complaint" in evaluating a Rule 12(b)(6) motion "if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.").

[32] *See* Fed. R. Civ. P. 12(d).

[33] As noted, Ms. Fraga alleges Detective Griffiths arrested her without presenting a warrant, which the video confirms. For the first time in her opposition, Ms. Fraga states Detective Griffiths did not "mention" her outstanding warrants. (Opp'n 2, Doc. No. 19.) But the video shows Detective Griffiths told Ms. Fraga she was being arrested on

B.  *Claims Against Sandy City Police Department*

Defendants argue the Sandy City Police Department cannot be sued because it is a subdivision of a municipality rather than a separate legal entity.[34]  This is correct.

"The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to be sued."[35]  In Utah, municipalities may sue or be sued,[36] but there is no statutory authority permitting lawsuits against municipal subdivisions such as police departments.[37]  As a result, Sandy City Police Department is not a legal entity subject to suit separate from the city.[38]

Some courts have construed pro se complaints against a governmental subdivision as asserting a claim against the main governmental entity.[39]  But even if Ms.

---

multiple warrants.  Thus, even if the video were considered, it would not be helpful to Ms. Fraga's position.

[34] (Mot. 7–8, Doc. No. 18.)

[35] *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (unpublished) (citing Fed. R. Civ. P. 17(b)).

[36] Utah Code § 10-1-202.

[37] *See Kojima v. Lehi City*, No. 2:13-cv-00755, 2015 U.S. Dist. LEXIS 92072, at *10–11 (D. Utah July 14, 2015) (unpublished).

[38] *See id.* (finding Utah law did not permit a city's policy department to be sued); *Fail v. W. Valley City*, No. 2:04-cv-01094, 2006 U.S. Dist. LEXIS 21698, at *6 (D. Utah Mar. 28, 2006) (unpublished) (same).

[39] *See, e.g.*, *Faircloth v. Wilcox*, No. 2:24-cv-00807, 2024 U.S. Dist. LEXIS 213388, at *1 n.2 (D. Utah Nov. 21, 2024) (unpublished) ("Plaintiff actually names Salt Lake County Sheriff's Office as the defendant.  However, the sheriff's office is not an entity that can sue and be sued.  Thus, an official-capacity claim is construed to be against the main governmental entity, Salt Lake County." (citations omitted)); *Tyler v. Utah*, No. 2:07-cv-00004, 2008 U.S. Dist. LEXIS 103769, at *8 (D. Utah Dec. 23, 2008)

Fraga's claims against the police department are liberally construed as claims against Sandy City, these claims still fail because Ms. Fraga does not allege any facts establishing municipal liability under 42 U.S.C. § 1983.

Section 1983 provides a recovery mechanism for violations of federal rights in certain circumstances.[40]  "To establish a cause of action under [§] 1983, a plaintiff must allege (1) deprivation of a federal right by (2) a person acting under color of state law."[41] But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[42]  "Instead, 'the government as an entity' may only be held liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"[43]

"There are three requirements for municipal liability under 42 U.S.C. § 1983: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the

---

(unpublished) ("[T]he Court construes Plaintiff's claim against the Sheriff's Office as a claim against Salt Lake County itself.").

[40] *See* 42 U.S.C. § 1983; *see also Margheim v. Buljko*, 855 F.3d 1077, 1084 (10th Cir. 2017) (describing § 1983 generally).

[41] *Watson v. Kansas City*, 857 F.2d 690, 694 (10th Cir. 1988).

[42] *Waller*, 932 F.3d at 1283 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[43] *Id.* (quoting *Monell*, 436 U.S. at 694).

policy with deliberate indifference to an almost inevitable constitutional injury."[44]   The

"municipal policy or custom" may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom
> amounting to a widespread practice that, although not authorized by written
> law or express municipal policy, is so permanent and well settled as to
> constitute a custom or usage with the force of law; (3) the decisions of
> employees with final policymaking authority; (4) the ratification by such final
> policymakers of the decisions—and the basis for them—of subordinates to
> whom authority was delegated subject to these policymakers' review and
> approval; or (5) the failure to adequately train or supervise employees, so
> long as that failure results from deliberate indifference to the injuries that
> may be caused.[45]

Here, Ms. Fraga alleges the Sandy City Police Department set "policies and

practices that allowed the alleged wrongful arrest and detention to occur without

following proper legal protocols."[46]   But this allegation is conclusory and insufficient to

state a claim for municipal liability.   A plaintiff "cannot simply allege there is a policy in

place, but, rather, must plead facts that, if true, would give rise to a plausible inference

that such a policy exists."[47]   Ms. Fraga's allegations merely restate the elements of a

municipal liability claim, without providing supporting detail.   She does not identify any

"formal regulation or policy statement" or allege facts from which such a policy could be

---

[44] *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (unpublished) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

[45] *Waller*, 932 F.3d at 1283 (citation omitted).

[46] (Compl. 4, Doc. No. 1.)

[47] *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015).

inferred.[48]  Nor does she allege "similar mistreatment of similarly situated individuals,"

as required to show the existence of an informal custom giving rise to municipal

liability.[49]  Likewise, Ms. Fraga's allegations do not relate to decisions made or ratified

by final policymakers, and she does not allege any failure to train or supervise

employees.  Accordingly, Ms. Fraga fails to state a claim for municipal liability under

§ 1983 against Sandy City, and the claims against the Sandy City Police Department

should be dismissed.

### C.  Claims Against Detective Griffiths

Defendants next argue Detective Griffiths is entitled to qualified immunity.  Public

officials "are entitled to qualified immunity under § 1983 unless (1) they violated a

federal statutory or constitutional right, and (2) the unlawfulness of their conduct was

clearly established at the time."[50]  "To establish that the law was clearly established in

this context, the plaintiff must point to Supreme Court or Tenth Circuit precedents [on]

point, or to the clear weight of authority from other circuit courts deciding that the law

was as the plaintiff maintains."[51]

---

[48] *Waller*, 932 F.3d at 1283.

[49] *Hunt v. Iron Cnty.*, 372 F. Supp. 3d 1272, 1289 (D. Utah 2019) (citing *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008)).

[50] *Thompson*, 23 F.4th at 1255 (citation omitted).

[51] *Id.*

"Because they turn on a fact-bound inquiry, qualified immunity defenses are typically resolved at the summary judgment stage rather than on a motion to dismiss."[52] "Asserting a qualified immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment."[53]  On a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for constitutionality."[54]

Under this standard, as explained below, Ms. Fraga fails to allege any violation of clearly established rights under the Fourth or Fourteenth Amendments.  Therefore, Detective Griffiths is entitled to qualified immunity on Ms. Fraga's claims.

### 1.  Fourth Amendment Search and Seizure

Ms. Fraga claims Detective Griffiths violated her Fourth Amendment rights when he "arrived at [her] home and forcibly detained [her] without *presenting* a warrant."[55] While another part of her complaint refers to her "arrest without a warrant,"[56] the state court records provided by the defendants show there were two outstanding arrest warrants for Ms. Fraga at the time of her arrest.[57]  In her opposition, Ms. Fraga

---

[52] *Id.* (internal quotation marks omitted).

[53] *Id.* (citation modified).

[54] *Id.* (emphasis in original) (citation modified).

[55] (Compl. 4, Doc. No. 1 (emphasis added).)

[56] (*Id.* at 3.)

[57] (*See* Ex. 1 to Mot., Doc. No. 18-1 (arrest warrant issued August 16, 2024); Ex. 2 to Mot., Doc. No. 18-2 (arrest warrant issued May 25, 2023); Exs. 3 & 4 to Mot., Doc. Nos.

acknowledges these outstanding warrants existed but reiterates Detective Griffiths failed to "present" a warrant during her arrest.[58]  Therefore, Ms. Fraga's claim is not based on a warrantless arrest, but rather an arrest without *presenting* a warrant.

It is well-established that under the Fourth Amendment, "absent exigent circumstances, police officers may not enter an individual's home without consent to make a warrantless routine felony arrest even if probable cause to arrest the individual exists."[59]  But Ms. Fraga has not identified, and the undersigned has not found, any Supreme Court or Tenth Circuit case holding that a police officer violates the Fourth Amendment by failing to *present* a warrant before making an in-home arrest, where an outstanding warrant exists.  In the context of an arrest outside the home, the Tenth Circuit has held there is no constitutional right "to be shown an arrest warrant at the time of arrest."[60]  Nor is there clear weight of authority from other circuit courts supporting Ms. Fraga's position; rather, courts addressing this issue have found no constitutional requirement to present a warrant during an in-home arrest.[61]  Therefore, Ms. Fraga has

---

18-3 & 18-4 (docket sheets showing both warrants were recalled August 29, 2024, the day after Ms. Fraga's arrest).)

[58] (Opp'n 2, Doc. No. 19.)

[59] *United States v. Reeves*, 524 F.3d 1161, 1165 (10th Cir. 2008) (citing *Payton v. New York*, 445 U.S. 573, 576 (1980)).

[60] *Lewis v. Nelson*, No. 96-3400, 1997 U.S. App. LEXIS 12703, at *8 (10th Cir. June 2, 1997) (unpublished).

[61] *See, e.g.*, *United States v. Buckner*, 717 F.2d 297, 301 (6th Cir. 1983) (finding "[t]he fact that the officers did not have the arrest warrant in hand" during a home arrest was of "no consequence" where the officers had reliable knowledge that a warrant had been

not shown Detective Griffiths' failure to present a warrant when he arrested her at her home was unlawful under clearly established law.

Ms. Fraga also claims the seizure of her cell phone during the arrest violated the Fourth Amendment.  Specifically, she alleges Detective Griffiths "seiz[ed] personal property without a valid warrant,"[62] and states her cell phone was confiscated and subsequently damaged.[63]  But "the Fourth Amendment allows officers to search individuals without a warrant if that search is incident to the [individual's] lawful arrest," to "protect officers and prevent the destruction of evidence."[64]  In other words, officers may seize and secure an arrestee's cell phone to prevent destruction of evidence.[65]  Where Ms. Fraga has not established her arrest was unlawful, she cannot show the seizure of her phone during the arrest was unlawful under clearly established law.  And while an unreasonable delay in either obtaining a search warrant or returning the

---

issued); *United States v. Turcotte*, 558 F.2d 893, 896 (8th Cir. 1977) (finding "no merit to appellant's contention that his arrest was unlawful due to the failure of the arresting officer to serve him with a copy of the arrest warrant"); *see also Grund v. Aden*, No. 3:22cv4797, 2022 U.S. Dist. LEXIS 240893, at *17 n.8 (N.D. Fla. Dec. 19, 2022) (unpublished) ("Plaintiff has not cited (nor has the Court located) any constitutional requirement that a police officer display a warrant before entering a home.").

[62] (Compl. 4, Doc. No. 1.)

[63] (*Id.*)

[64] *Miller v. Bear*, 781 F. App'x 745, 752 (10th Cir. 2019) (unpublished) (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009)).

[65] *See Riley v. California*, 573 U.S. 373, 388 (2014) (noting "officers could have seized and secured [the arrestees'] cell phones to prevent destruction of evidence while seeking a warrant").  Ms. Fraga does not allege her cell phone was searched, merely that it was seized and damaged.

property can sometimes violate the Fourth Amendment,[66] Ms. Fraga does not allege Detective Griffiths was personally responsible for the three-week delay in returning her phone.[67]  Nor is it clearly established that a three-week delay is unreasonable.[68]

In sum, Ms. Fraga has not demonstrated Detective Griffiths acted unlawfully under clearly established law by arresting her without presenting a warrant or seizing her cell phone during the arrest.  Accordingly, Detective Griffiths is entitled to qualified immunity on Ms. Fraga's Fourth Amendment claims.

### 2.  *Fourteenth Amendment Due Process*

Ms. Fraga claims her Fourteenth Amendment due process rights were violated "related to [her] arrest, detention, and the seizure and damage of [her] property."[69] First, Ms. Fraga's claims related to her arrest, detention, and the seizure of her phone are governed by the Fourth Amendment, not the Fourteenth Amendment due process clause.[70]  Accordingly, she fails to state a Fourteenth Amendment due process claim based on the allegations related to her arrest, detention, and the seizure of her phone.

---

[66] *See United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013).

[67] *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (citation modified)).

[68] *Cf. Christie*, 717 F.3d at 1164 (finding a five-month delay in obtaining a search warrant could be constitutionally reasonable in some circumstances).

[69] (Compl. 3, Doc. No. 1.)

[70] *See Turner v. Houseman*, 268 F. App'x 785, 789 (10th Cir. 2008) (unpublished) ("The Fourth Amendment protects a person's liberty interests under the constitution by ensuring that any arrest or physical incarceration attendant to a criminal prosecution is

As for Ms. Fraga's claim that her cell phone was damaged, she fails to allege Detective Griffiths' personal involvement.[71]  Ms. Fraga also fails to allege Utah state remedies are inadequate to address damage to her cell phone, as required to state a Fourteenth Amendment due process claim based on deprivation of property.[72]

Finally, Ms. Fraga alleges she "did not receive any medical treatment for the emotional distress [she] was experiencing" while detained.[73]  Denial of medical care during pretrial detention may implicate Fourteenth Amendment due process.[74]  But again, Ms. Fraga fails to allege Detective Griffiths' personal involvement in any denial of medical care.  For these reasons, Detective Griffiths is entitled to qualified immunity on Ms. Fraga's Fourteenth Amendment claims.

---

reasonable.  The more general procedural and substantive due process considerations of the Fourteenth Amendment are not a fallback to protect interests more specifically addressed by the Fourth Amendment in this context." (citation modified)); *see also Champion v. McCalister*, No. 23-6141, 2024 U.S. App. LEXIS 16068, at *9 n.5 (10th Cir. July 2, 2024) (unpublished) (finding Fourteenth Amendment claims were properly dismissed where the specific allegations related to arrest, search, and seizure implicated Fourth Amendment rights).

[71] *See Brown*, 662 F.3d at 1163.

[72] *See Carr v. Zwally*, 760 F. App'x 550, 555 (10th Cir. 2019) (unpublished) ("The intentional deprivation of property is not a Fourteenth Amendment violation if adequate state post-deprivation remedies are available." (citation modified)).

[73] (Compl. 5, Doc. No. 1.)

[74] *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) ("Under the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." (citation modified)).

## RECOMMENDATION

Because Ms. Fraga's complaint fails to state a plausible claim for relief against Sandy City Police Department or Sandy City, and Detective Griffiths is entitled to qualified immunity, the undersigned recommends the district judge grant the motion to dismiss[75] and dismiss this action without prejudice.[76]  The parties have the right to object to this Report and Recommendation within fourteen days, and failure to object may be considered a waiver of objections.[77]

DATED this 30th day of July, 2025.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[75] (Doc. No. 18.)

[76] Where Ms. Fraga is pro se and Defendants do not request dismissal with prejudice, the undersigned recommends dismissal without prejudice.

[77] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).